IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER BELFI | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-4346 |
| | : | |
| THOMAS WAGNER, et al. | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                    **September 30, 2024**

Pro se Plaintiff Alexander Belfi brings this action against the law firm Marshall Dennehey, PC and five individual attorneys, seeking damages for Defendants' alleged misconduct in a civil lawsuit they successfully prosecuted against him in state court between December 2017 and January 2020. Defendants have moved to dismiss Belfi's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). They argue Belfi's claims, which focus almost entirely on Defendants' conduct during the underlying state court action, are barred by the applicable one- and two-year statutes of limitations or by the judicial privilege doctrine. They also argue the claims are not Belfi's to pursue, as they belong to his bankruptcy estate. It is clear from the face of the Amended Complaint and the other materials properly before the Court that dismissal is appropriate based on one or more of the grounds advanced by Defendants. The motion will therefore be granted, and the Amended Complaint will be dismissed.

**BACKGROUND**[1]

On December 27, 2017, Attorney Gregory Fox, one of the individual Defendants in this action,[2] filed a complaint against Belfi in the Philadelphia County Court of Common Pleas on behalf of his client, Mary Elizabeth Brophy. Am. Compl. ¶ 1. The complaint was filed by Brophy both in her individual capacity and as managing partner of and trading as "League Street Partnership." *Id.* In the complaint, Brophy asserted claims for breach of fiduciary duty, breach of contract, a declaratory judgment, and unjust enrichment, among others, all based on the theory that Brophy and Belfi had entered into a written partnership agreement to create an entity called the League Street Partnership to own and develop real property in Philadelphia. *Id.* ¶¶ 1-3. According to Belfi, the filing of the state court action breached the very partnership agreement on which Brophy's claims were based, as the agreement contained an arbitration clause. *Id.* ¶¶ 19-20.[3]

---

[1] The following facts are drawn from Belfi's Amended Complaint, the exhibits to the Amended Complaint, and the state and federal court dockets pertaining to both the underlying state court action from which Belfi's claims in this case arise and Belfi's bankruptcy case. These "[c]ourt dockets may be considered on a motion to dismiss because they are matters of public record." *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 167 n.12 (E.D. Pa. 2017); *see also Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (noting a court "may take judicial notice of the contents of another Court's docket"); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").

[2] The individual attorney Defendants are Fox, Thomas Wagner, Melanie Foreman, Meredith Lussier, and Butler Buchanan, III. Attorney Buchanan is sued in his capacity as Managing Attorney of Marshall Dennehy's Philadelphia office based on a theory of vicarious liability. Am. Compl. 3, ECF No. 7. The remaining individual Defendants, three of whom are or were affiliated with the Marshall Dennehy firm during the relevant timeframe, are alleged to have personally participated in the tortious conduct pled. *Id.* at 2-3.

[3] Belfi also alleges the filing of the state court action was improper in other ways, noting various improprieties in the cover sheet, Defendants' purposeful failure to include a "jurisdiction and venue" statement in the complaint, and their failure to satisfy the procedural requirements for filing a derivative action. Am. Compl. ¶¶ 14-18, 21.

Although the existence of a written partnership agreement was integral to Brophy's claims against Belfi, she and her counsel refused to produce the original agreement. *Id.* ¶ 24. They instead produced only a copy of the agreement, which Belfi maintained (and continues to maintain) was forged.[4] *See id.* ¶¶ 23-24, 27-30.

Defendants successfully litigated the case in state court for two years, obtaining "substantial monetary pre-trial orders/judgments against Belfi, which froze all of his assets, requested certain monies be paid into an IOLTA [account] and the current leases, deeds, and titles for his property at 1502 E. Moyamensing be turned over to the court." *Id.* ¶ 7. Belfi alleges that during the course of the litigation, Defendants failed to respond to discovery requests, withheld documents fatal to Brophy's claims, and helped Brophy avoid her deposition on several occasions. *Id.* ¶¶ 36, 41. He also asserts they used the court to harass him by filing frivolous motions to compel and for contempt. *Id.* ¶ 42. As a result of Defendants' frivolous filings, Belfi was nearly held in contempt of a June 6, 2018 court order freezing his funds in his primary account at Radius Bank at a hearing on June 11, 2018. *Id.* ¶¶ 44, 50. According to the Amended Complaint, although the state trial judge told Defendants at the June 11, 2018 hearing that they could not garnish Belfi's military disability benefits, Defendants succeeded in freezing Belfi's account. *Id.* ¶¶ 45, 50 & Ex. 7 at 53. Defendants also abused their subpoena power by serving a subpoena on Radius Bank on July 10, 2018, seeking Belfi's personal and financial information, without first filing the subpoena with the court to afford Belfi an opportunity to object. *Id.* ¶¶ 51-53.

---

[4] Belfi obtained an expert opinion supporting his contention that his signature on the agreement was forged in February 2018, three months after the state court action was filed. *See* Am. Compl. Ex. 3.

The state court action ultimately went to trial in November 2019.[5]  *See id.* ¶¶ 27-28.  At trial, Belfi presented unrefuted expert testimony from a Certified Document/Handwriting Examiner to support his claim that his signature on the partnership agreement was forged.  *Id.* ¶¶ 23, 27-30.  Nevertheless, on December 16, 2019, the trial court found in favor of Brophy, individually and as managing partner of, and trading as, League Street Partnership, on her claim for unjust enrichment and awarded $118,276.09 in damages.  Defs.' Ex. B, ECF No. 17-2 at 48-49 (12/18/19 docket entry).  Judgment was entered in favor of Brophy and League Street Partnership, and against Belfi on January 9, 2020.  *Id.* at 50 (1/9/20 docket entry).

Belfi appealed, but the Superior Court quashed the appeal in May 2020.  Defs.' Ex. B, ECF No. 17-2 at 49 (12/18/19 docket entry); Defs.' Ex. D, ECF No. 17-4 at 4-5 (5/19/20 docket entry).

On December 16, 2021, Belfi filed a Chapter 7 bankruptcy petition.  Defs.' Ex. I, ECF No. 17-9 at 2 (12/16/21 docket entry); *see also* Am. Compl. ¶¶ 103, 116 (alleging Defendants' actions destroyed Belfi financially, culminating in bankruptcy).  The bankruptcy case was concluded in June 2022.  Defs.' Ex. I, ECF No. 17-9 at 8.

Beginning in December 2022, nearly three years after judgment was entered against him in the Court of Common Pleas, Belfi made a series of attempts to obtain relief from that judgment in both state and federal court.  In state court, he first filed an application to reinstate his appeal in the Superior Court.  Defs.' Ex. D, ECF No. 17-4 at 4 (12/27/22 docket entry).  When that application was denied, he filed two motions in the Court of Common Pleas, one seeking to vacate the judgment and the other for release of funds.  Defs.' Ex. B, ECF No. 17-2 at 51-52 (1/24/23

---

[5] In April 2019, six months before trial, Belfi attempted to remove the case to federal court, but the case was remanded.  *See* Defs.' Ex. C, ECF No. 17-3 at 3-4.  (Citations in the form "Defs.' Ex. __" are to the dockets attached as exhibits to Defendants' motion to dismiss.  Citations to page numbers within these exhibits use ECF pagination.)

docket entries).  At the same time, Belfi also filed a motion for relief from judgment in federal court, in the 2019 removal action.  Defs.' Ex. C, ECF No. 17-3 at 5 (1/24/23 docket entry).  All three motions were denied.  Defs.' Ex. B, ECF No. 17-2 at 54-56 (3/1/23 docket entry); Defs.' Ex. C, ECF No. 17-3 at 5-6 (2/27/23 docket entry).  Belfi then appealed the rulings in state and federal court. Defs.' Ex. B, ECF No. 17-2 at 54-56 (3/2/23 docket entries); Defs.' Ex. C, ECF No. 17-3 at 5-6 (3/23/23 docket entry)  In April 2023, while those appeals were pending, he again attempted to remove the state court action to federal court, and the case was again remanded.  Defs.' Ex. H, ECF No. 17-8 at 2, 4 (4/24/23 and 7/20/23 docket entries).  Belfi appealed the remand order to the Third Circuit Court of Appeals.[6]  *See id.*, ECF No. 17-8 at 4 (8/9/23 docket entry).

On August 24, 2023, Attorney Thomas Wagner took what Belfi contends was "the first affirmative act in attempting to validate the fraudulent League Street Partnership" by filing a Corporate Disclosure Statement in the Third Circuit Court of Appeals pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1 in one of Belfi's then-pending appeals.  Am. Compl. ¶ 55 & Ex. 8.  The filing identified the party making the disclosures as "Mary Elizabeth Brophy; Mary Elizabeth Brophy as the Managing Partner of and t/a/ League Street Partnership."[7]  *Id.* Ex. 8.  According to Belfi, this filing prompted him to make inquiry to

---

[6] All of Belfi's appeals have since been denied.  The Third Circuit affirmed the denial of Belfi's motions for relief from judgment in the 2019 removal action in August 2023, and dismissed his appeal from the 2023 remand order in November 2023.  Defs.' Ex. G, ECF No. 17-7 at 4 (8/14/23 docket entry); *Brophy v. Belfi*, C.A. No. 23-2452 (3d Cir.) (11/17/23 docket entry).  The Superior Court quashed both of Belfi's state court appeals in March 2024.  *See Brophy v. Belfi*, 614 EDA 2023 (Pa. Super. Ct.) (3/21/24 docket entry); *Brophy v. Belfi*, 615 EDA 2023 (Pa. Super. Ct.) (3/20/24 docket entry).  These dispositions are reflected on the publicly available dockets in these cases.  Because all but the first of the dispositions occurred after this case was filed, however, they are not reflected in the dockets attached to Defendants' motion to dismiss.

[7] Belfi responded to the Corporate Disclosure Statement by filing a "Motion for Fraud on the court seeking an order requiring the defendants to produce a certificate of Authority, the fictitious name filing, and the state and status of incorporation of the purported general partnership (i.e., the

the Pennsylvania Secretary of State regarding the official status of the League Street Partnership. *See id.* ¶ 127.   On September 1, 2023, the Secretary of the Commonwealth certified that an examination of the "indices and [r]ecords" of the Pennsylvania Department of State "fail[ed] to disclose a presently subsisting either Foreign or Domestic filing Association, Limited Liability Partnership, or a registration under the provisions of the Fictitious Names Act bearing the title, League Street Partnership." *Id.* ¶ 13 & Ex. 2.

On November 5, 2023, Belfi commenced this new federal court action by filing a Complaint against Marshall Dennehy and the five individual attorney Defendants.  Belfi filed an Amended Complaint later the same month, asserting claims against all Defendants for (1) abuse of process, (2) violations of the federal Fair Debt Collection Practices Act (FDCPA), the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), (3) tortious interference with contractual relations, (4) negligent misrepresentation; (5) aiding and abetting fraud and civil conspiracy, and (6) intentional infliction of emotional distress.  Am. Compl. ¶¶ 56-121.  As noted, these claims arise almost entirely from Defendants' conduct in filing and prosecuting the underlying civil action against him in the Court of Common Pleas.  The Amended Complaint also includes counts captioned "Tolling," "Punitive Damages," and "Vicarious Liability." *Id.* ¶¶ 122-35.

Defendants have moved to dismiss the Amended Complaint in its entirety on grounds that all of Belfi's claims are barred by the applicable statute of limitations, most are barred by the

---

League Street Partnership)." Am. Compl. ¶ 55.  Although the motion was pending when Belfi filed the Amended Complaint in this case, it was denied in a November 17, 2023 Order that also dismissed Belfi's appeal from the remand order for lack of appellate jurisdiction.  Order in *Brophy v. Belfi*, C.A. No. 23-2452 (3d Cir. Nov. 17, 2023), ECF No. 18-1.

judicial privilege doctrine,[8] and Belfi lacks standing to bring the claims, which belong to his bankruptcy estate.[9]  Belfi opposes the motion.

**DISCUSSION**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"—i.e., facts that are more than "'merely consistent with' a defendant's liability."  *Id.* (quoting *Twombly*, 550 U.S. at 556-57).

In evaluating a motion to dismiss, a court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party."  *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).  The court may also consider "exhibits attached to the complaint," "matters of public record," and documents "integral to or explicitly relied upon in the

---

[8] Defendants concede Belfi's claim for abuse of process is not barred by the judicial privilege doctrine.  Defs.' Mem. Supp. Mot. Dismiss 13 n.8, ECF No. 17.  The privilege is also inapplicable to claims under the FDCPA.  *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011) (holding New Jersey's litigation privilege "does not absolve a debt collector from liability under the FDCPA" because "the FDCPA does not contain an exemption from liability for common law privileges").

[9] Defendants also assert—in a footnote—that Belfi cannot prevail on the merits because he has not alleged sufficient facts to establish any of his claims and because his claims require an assessment of the applicable standard of care yet his certificate of merit states expert testimony is unnecessary. Defs.' Mem. Supp. Mot. Dismiss 6 n.5, ECF No. 17.  Because these arguments are not developed and lack citations to legal authority, the Court focuses on Defendants' primary grounds for dismissal.

complaint" at the motion to dismiss stage, without converting the motion into one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis, citation, and internal quotation marks omitted). Where, as here, the plaintiff is proceeding pro se, the court must construe the complaint liberally, holding it "to less stringent standards than formal pleadings drafted by lawyers." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Although the statute of limitations is an affirmative defense that ordinarily must be asserted in a responsive pleading, *see* Fed. R. Civ. P. 12(b), the Third Circuit permits a defendant to raise a limitations defense in a Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt*, 770 F.3d at 249 (citation and internal quotation marks omitted). A court cannot dismiss a case as time-barred, however, unless the limitations bar is "apparent on the face of the complaint." *Id.* (citation and internal quotation marks omitted).

### A.  Abuse of Process

Belfi's abuse of process claim will be dismissed because it is based on conduct that either occurred outside the limitations period or is not actionable as abuse of process. To establish a claim for abuse of process, a plaintiff must show the defendant "(1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Langman v. Keystone Nazareth Bank & Tr. Co.*, 502 F. App'x 220, 224 (3d Cir. 2012) (quoting *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008)). Abuse of process claims are subject to a two-year statute of limitations. *Id.* at 221 (citing 42 Pa. Cons. Stat. Ann. § 5524(1)). The limitations period "begins to run as soon as the right to institute and maintain a suit arises," *id.* at 224 (quoting *Pocono Int'l Raceway, Inc. v. Pocono*

8

*Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983))—typically "on the date the alleged abuse occurs," *P.J.A. v. H.C.N.*, 156 A.3d 284, 289 (Pa. Super. Ct. 2017).

The Amended Complaint alleges Defendants engaged in abuse of process by (1) unlawfully garnishing Belfi's veteran disability funds and restricting him "to use his personal funds for his daily personal and business expenses" in an attempt to coerce a settlement and damage his reputation, Am. Compl. ¶¶ 59-60; (2) filing the underlying civil action in court, notwithstanding the partnership agreement's mandatory arbitration clause, in an effort to stifle Belfi's business dealings and cause him to incur costs, *id.* ¶¶ 61-62; (3) proposing a release that would have required Belfi to drop all claims to coerce a settlement and "buy [their] way out [of] liability for the intentional damages [they] have caused Belfi," *id.* ¶¶ 63-64, 68-69; and (4) using the underlying civil action "to impose a restraint on Belfi's property at 1502 E. Moyamensing for use as a bargaining chip," *id.* ¶ 67.   In his opposition to the motion to dismiss, Belfi adds that Defendants' abuse of process also encompasses (5) using a subpoena never served on Belfi to obtain his personal bank statements; (6) "filing a fraudulent corporate disclosure"; (7) "not engaging in discovery"; and (8) "communicating directly with his bank and mortgage company outside of any order allowing them to do so."[10]  Pl.'s Opp'n 8, ECF No. 18.

Except for the filing of the corporate disclosure statement, however, all of this conduct occurred while the underlying action was being litigated in the Court of Common Pleas between December 2017 and January 2020, nearly four years before Belfi filed this lawsuit in November 2023.   While Belfi does not specify the dates on which his funds were garnished and restricted, the Amended Complaint makes clear that these actions were taken while the state court litigation

---

[10] Belfi does not explain how Defendants used these any of these additional "processes" to accomplish a purpose for which the process was not designed.

was ongoing.  It alleges, for example, that Belfi's assets were frozen as a result of "*pre-trial orders/judgments*," Am. Compl. ¶ 7 (emphasis added); refers to a "June 6, 2018 freeze order" and a June 11, 2018 hearing at which Belfi was nearly held in contempt of that order, *id.* ¶¶ 44, 50; and notes Belfi testified about the garnishment of his funds at trial on November 25, 2019, *id.* ¶ 77. Indeed, these actions could only have occurred while the state court litigation was ongoing—and with Belfi's knowledge—since he maintains they were "an attempt to coerce [him] into a settlement" of that litigation.  *Id.* ¶ 59.

As for the other abuse of process allegations, Belfi claims Defendants filed the complaint in the underlying state court action on December 27, 2017,[11] *id.* ¶ 1, and proposed the release Belfi found objectionable on September 19, 2019, *id.* ¶ 63 & Ex. 9.  With regard to the restraint on Belfi's property at 1502 E. Moyamensing, the Amended Complaint references a March 12, 2018 court order stating "1502 E Moyamensing may not be sold," *id.* ¶ 97, and alleges Defendants obtained "orders/judgments against Belfi" requiring "the current leases, deeds, and titles for [this property] be turned over to the court" prior to trial, *id.* ¶ 7.  The subpoena for Belfi's personal and financial information is alleged to have been served on his bank on July 10, 2018,[12] *id.* ¶ 51, and Defendants are alleged to have communicated with Belfi's bank and mortgage company on June 7, 2018 and March 12, 2019, *id.* ¶¶ 49, 93 & Ex. 10.  Finally, Defendants' failure to engage discovery in the underlying state court action necessarily would have occurred while that action

---

[11] While Belfi maintains the partnership agreement containing the arbitration clause was fraudulent, he was unquestionably aware of the agreement, which he admits "was produced at the commencement of the civil action."  Am. Compl. ¶ 24.

[12] Although Belfi alleges the *subpoena* was not filed with the trial court, preventing him from objecting to its form and components, Am. Compl. ¶¶ 52-53, the docket in the state court action reflects that Defendants filed a certificate prerequisite to service of the subpoena pursuant to Rule 4009.22 on July 10, 2018, Defs.' Ex. B, ECF No. 17-2 at 23 (7/10/18 docket entry).

was ongoing.  *See id.* ¶ 40 (noting Defendants' failure to respond to discovery requests served on May 29, 2018).

The only alleged abuse of process that occurred within the limitations period was Attorney Wagner's filing of a corporate disclosure statement in the Third Circuit on August 23, 2023.  This filing, however, cannot support liability for abuse of process.  Even assuming the filing constitutes use of a legal process against Belfi, he has not alleged—and cannot show—the filing caused him any harm.  The corporate disclosure statement is attached as an exhibit to Belfi's Amended Complaint.  The instructions on the first page of the form explain its purpose is "to provide the judges with information about any conflicts of interest which would prevent them from hearing the case." Am. Compl. Ex. 8.  To that end, the form includes four questions that ask the responding "nongovernmental corporate party" to identify any parent corporations, publicly held companies holding 10% or more of the party's stock, non-party publicly held corporations that have a financial interest in the outcome of the proceeding, and certain participants in bankruptcy appeals.  *Id.*  In completing the form, Attorney Wagner identified "Mary Elizabeth Brophy; Mary Elizabeth Brophy as the Managing Partner of and t/a League Street Partnership" as the party making the disclosure and responded "N/A" (or not applicable) to each of the four inquiries.  *Id.*  Belfi alleges the filing was "an attempt to validate a fraudulent partnership through the courts." Pl.'s Opp'n 3, ECF No. 18; Am. Compl. ¶ 55.  But the filing merely identified "Mary Elizabeth Brophy as the Managing Partner of and t/a League Street Partnership" as a plaintiff in the action—just as the complaint in the underlying civil action had done when it was filed in state court in December 2017.[13]  Am. Compl. ¶ 1.  It did not ask the Court of Appeals to take any action to "validate" the

---

[13] Because the federal court case was a removed from state court, the parties were the same as in the state court action.

partnership.  And it plainly had no impact on the Court's disposition of the appeal, which was dismissed for lack of appellate jurisdiction because the district court's remand order was not appealable.  Order in *Brophy v. Belfi*, C.A. No. 23-2452 (3d Cir. Nov. 14, 2023), ECF No. 18-1.[14]

In responding to Defendants' argument that his abuse of process claim should be dismissed as time-barred, Belfi does not dispute that the conduct on which the claim is based—apart from Attorney Wagner's filing of a corporate disclosure statement in the Third Circuit—occurred outside the two-year limitations period.  He instead invokes the continuing violation doctrine and the discovery rule to argue the claim did not accrue until the corporate disclosure statement was filed on August 23, 2023.  The Amended Complaint also anticipatorily invokes the doctrine of fraudulent concealment, alleging the statute of limitations should be tolled based on Defendants' misrepresentations and/or concealment regarding the status of the partnership.  *Id.* ¶¶ 122-29.  All of these arguments are unavailing.

Pennsylvania's discovery rule tolls the statute of limitations "until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct."  *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005).  Belfi asserts, without elaboration, that he lacked "sufficient information to recognize that the matter warrant[ed] further pursuit" until Attorney Wagner filed the corporate disclosure statement in the Third Circuit.  Pl.'s Opp'n 3, ECF No. 18; *see also* Pl.'s Surreply 2, ECF No. 27 ("[O]nly when Mr. Wagner filed the

---

[14] In a different count of his Amended Complaint, Belfi alleges that when he filed a motion to vacate the court order garnishing his exempt funds in January 2023, Defendants opposed it.  Am. Compl. ¶¶ 77-78.  Belfi asserts the filing of the opposition "tolled or became new claims against the defendants for abuse of process and violations of the FDCPA."  *Id.* ¶ 78.  The docket in the state court action reflects that the opposition was filed at the request of the trial court.  *See* Defs.' Ex. B, ECF No. 17-2 at 52 (2/21/23 docket entry).  Belfi provides no explanation as to how Defendants' filing of a court-ordered opposition to a motion to vacate the judgment they obtained three years earlier constitutes abuse of process.

corporate disclosure was the plaintiff able to maintain his action to a successful conclusion."). This filing, however, is irrelevant to Belfi's claims. Belfi's own Amended Complaint makes clear he was aware of the conduct he challenges as an abuse of process and the harm it caused him while the state court litigation was ongoing. The discovery rule is therefore inapplicable here.

The same is true of the continuing violation doctrine. "Under that doctrine, 'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). As explained above, the filing of the corporate disclosure statement cannot be the basis for an abuse of process claim and therefore cannot be part of a continuing practice of abuse of process. Even if it could, "the continuing violation doctrine does not apply when the plaintiff 'is aware of the injury at the time it occurred.'" *Id.* (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003)). Here, as noted, Belfi was aware of his injuries resulting from Defendants' alleged abuse of process during the state court litigation. The continuing violation doctrine thus does not toll statute of limitations here.[15]

---

[15] Belfi also asserts, again without elaboration, that Defendants' filing of an opposition to the motions to vacate and release funds he filed in the Court of Common Pleas in January 2023 is a "compelling reason[] to toll the statute of limitations on all claims due to the continuous violations and discovery rule." Pl.'s Opp'n 3, ECF No. 18 (footnotes omitted). The filing of the opposition could not have tolled the statute of limitations based on the discovery rule because Belfi has not stated a claim for abuse of process based on the filing of the opposition. And "a continuing violation is occasioned by continual unlawful *acts*, not continual ill effects from an original violation." *Montanez*, 773 F.3d at 481 (internal quotation marks and citation omitted). Belfi's alleged injuries stem from Defendants' actions in the underlying state court litigation, which was concluded by January 2020. The fact that Defendants would not accede to Belfi's efforts to reopen the state court judgment years later does not amount to a continuing violation.

Finally, there is no basis to apply the doctrine of fraudulent concealment here.  Under the doctrine of fraudulent concealment, a defendant "may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts."  *Fine*, 870 A.2d at 860.  "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception."  *Id.*  Where the doctrine applies, it tolls the statute of limitations until "the injured party knows or reasonably should know of his injury and its cause." *Id.* at 861.  Belfi appears to invoke the doctrine based on Defendants' misrepresentations and concealment regarding the status and validity of the partnership.  *See* Am. Compl. ¶¶ 122-29.  As Defendants note, however, it is clear from the Amended Complaint that Belfi knew the partnership was invalid during the state court litigation.  He obtained an expert report on February 21, 2018, concluding his signature on the partnership agreement was traced from another document and the agreement was therefore not authentic.  *Id.* Ex. 3 at 3, ECF No. 7.  He also presented expert testimony regarding the forged signature at trial on November 27, 2019.  *Id.* ¶¶ 27-30.  Having defended the state court action based in part on the partnership agreement's invalidity, Belfi cannot now maintain he was somehow deceived into believing the partnership was valid.[16]

---

[16] That Belfi did not learn until September 2023 of the lack of any filings with the Pennsylvania Department of State under the name "League Street Partnership" does not change the analysis. The lack of this information did not prevent Belfi from believing the partnership was invalid and seeking proof of that fact via an expert opinion and testimony.  Moreover, Belfi himself acknowledges that information regarding the partnership's lack of filings was readily available via a public records search on the Department of State website. Am. Compl. ¶ 31 (noting the website can be publicly searched and asking the court to take judicial notice of the lack of any "League Street Partnership" filings).

Because it is clear from the Amended Complaint that Belfi's abuse of process claim is either time-barred or based on conduct that is not actionable, the claim will be dismissed with prejudice.

### B.    FDCPA/FCEUA/UTPCPL

Although Belfi brings identical claims under the FDCPA, the FCEUA, and the UTPCPL,[17] the claims are subject to different statutes of limitations.  An action under the FDCPA must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d); *see also Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019) (holding the FDCPA's one-year limitations period "begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered").  An action under the FCEUA must be brought "within two years from the date on which the violation occurs."  73 Pa. Stat. § 2270.5(b).  Defendants assert that because Belfi's UTPCPL claim is based solely on a violation of the FCEUA, the claim is subject to the FCEUA's two-year statute of limitations rather than the six-year statute of limitations otherwise applicable to UTPCPL claims.[18]  Defs.' Mem. Supp. Mot. Dismiss 9, ECF No. 17. Defendants cite no law for this proposition, and the case law identified by the Court suggests otherwise.  *See Almashhadani v. Norris McLaughlin, P.A.*, Civ. No. 20-04681, 2021 WL 2454456, at *6 n.5 (E.D. Pa. June 16, 2021) (rejecting argument that FCEUA's two-year limitations period

---

[17] A violation of the FDCPA also constitutes "an unfair or deceptive debt collection act or practice" under the FCEUA.  73 Pa. Stat. § 2270.4(a).  Similarly, if a debt collector engages in "an unfair or deceptive debt collection act or practice" under the FCEUA, it is also a violation of the UTPCPL. *Id.* § 2270.5(a).

[18] *See Rodgers v. Lincoln Benefit Life Co.*, 845 F. App'x 145, 147 (3d Cir. 2021) ("A six-year statute of limitations applies to a UTPCPL claim." (citing *Morse v. Fisher Asset Mgmt., LLC*, 206 A.3d 521, 526 (Pa. Super. Ct. 2019)).

governed a UTPCPL claim based on a FCEUA violation).  The Court will therefore apply a six-year statute of limitations to Belfi's UTPCPL claim.

While Belfi's FDCPA/FCEUA/UTPCPL claims are difficult to decipher, they appear to be based primarily on Defendants' filing of "a false, misleading, and blatantly deceptive complaint" in the underlying state court action in an attempt to collect a debt, Am. Compl. ¶¶ 72, 76, and garnishment of Belfi's bank account, despite knowing the funds in the account were exempt (or without verifying Belfi's statements to that effect), *id.* ¶¶ 77, 84.  As noted above, these actions are alleged to have been taken while the state court action was pending between December 2017 and January 2020.  Belfi did not file this action until November 2023, well past two years later. As a result, his FDCPA and FCEUA claims are barred by the applicable one- and two-year statutes of limitations.

Belfi alleges Defendants' filing of an opposition to his post-judgment motion to vacate in 2023 constitutes a "new" FDCPA claim, *id.* ¶ 78, but this claim is nevertheless untimely.  Where an FDCPA claim is based on "allegations of improper pursuit of debt collection litigation," the statute of limitations begins to run either upon the filing of the underlying collection action or when the purported debtor was served.  *See Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 130-31 (3d Cir. 2009) (discussing circuit split on this issued).  The continuing violation doctrine does not apply in the FDCPA context.  *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1044 (9th Cir. 2023); *see also Schaffhauser*, 340 F. App'x at 131 (declining to extend the continuing violation doctrine to an FDCPA claim based on defendants' participation in ongoing debt collection litigation).  So post-filing litigation acts do not trigger a new limitations period unless they constitute standalone violations of the FDCPA.  *See Brown*, 73 F.4th at 1042.  Post-filing conduct must be "independent of [the] initial filing of the lawsuit—not a continuing effect

of it" to qualify as a standalone FDCPA violation.  *Bouye v. Bruce*, 61 F.4th 485, 493 (6th Cir.

2023).  "[S]tandard litigation events that reasonably follow the commencement of a lawsuit . . .

are not independent FDCPA violations."  *Brown*, 73 F.4th at 1044.  Belfi's motion to vacate and

Defendants' opposition to the motion were filed in the underlying state court action—the same

action in which Belfi alleges Defendants improperly garnished his exempt funds.  Belfi does not

allege Defendants took a new or different position in their 2023 opposition.  Rather, by opposing

Belfi's "Motion to Vacate the court order garnishing his exempt funds," Am. Compl. ¶ 77,

Defendants "simply 'reaffirmed' the legitimacy of [their earlier position]."  *Bouye*, 61 F.4th at 493.

The filing of the opposition thus does not qualify as an independent FDCPA violation with a new

limitations period.

　　　While Belfi's UTPCPL claim is not time-barred, the claim belongs to Belfi's bankruptcy

estate.  Because the estate never abandoned the claim, Belfi lacks authority to pursue it.

　　　Upon the filing of a voluntary bankruptcy petition, most of the debtor's property becomes

property of the bankruptcy estate.  *In re Wilton Armetale, Inc.*, 968 F.3d 273, 280 (3d Cir. 2020).

The estate "includes all kinds of property, including . . . causes of action."  *In re O'Dowd*, 233

F.3d 197, 202 (3d Cir. 2000) (citation omitted).  "A cause of action [becomes] property of the

estate if the claim existed at the commencement of the [bankruptcy] filing and the debtor could

have asserted the claim on his own behalf under state law."  *Wilton Armetale*, 968 F.3d at 280

(alterations in original) (quoting *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown,

Inc.*, 296 F.3d 164, 169 n.5 (3d Cir. 2002)).  Under the Bankruptcy Code, once a cause of action

becomes the estate's property, only the trustee has authority to pursue it.  *Id.*  The trustee also has

authority to abandon a cause of action belonging to the estate, but "must do so 'overt[ly].'"  *Id.* at

284 (citation omitted); *see also* 11 U.S.C. § 554(a) ("After notice and a hearing, the trustee may

abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."). Unless the bankruptcy court orders otherwise, property of the estate that is neither abandoned nor administered in the bankruptcy case "remains property of the estate." 11 U.S.C. § 554(d). Thus, "[a] cause of action[] which a debtor fails to schedule[] remains property of the estate because it was not abandoned and not administered." *Allston-Wilson v. Phila. Newspapers, Inc.*, Civ. No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20, 2006).

Here, as noted, Belfi's UTPCPL claim accrued while the underlying action was being litigated in state court, between December 2017 and January 2020, and thus became property of Belfi's bankruptcy estate upon the filing of his bankruptcy petition in December 2021. Belfi did not include the UTPCPL claim in the schedule of assets he filed in the bankruptcy case.[19] *See* Defs.' Ex. J, ECF No. 17-10. Rather, in response to the inquiry regarding "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," Belfi listed only a lawsuit he filed against USAA Federal Savings and MERSCORPO Holding Inc. *Id.* at 6. Belfi notes "the Chapter 7 Trustee had no interest in the claims and closed his file." Pl.'s Opp'n 11, ECF No. 18. But the docket entry Belfi cites gives no indication the Trustee abandoned any claims, and the Trustee could not have abandoned Belfi's UTPCPL claim in any event, as the claim was not scheduled. As a result, the claim remains property of the estate, and Belfi lack statutory authority to assert it.[20]

---

[19] The Court may consider this bankruptcy filing in deciding Defendants' motion to dismiss because it is a matter of public record. *See S. Cross Overseas Agencies, Inc.*, 181 F.3d at 426.

[20] This conclusion applies equally to all of Belfi's time-barred claims.

Belfi notes that Federal Rule of Civil Procedure 17 would permit the Court to join or substitute the Trustee as the real party in interest. *See* Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."). Belfi has made no effort to join or substitute the Trustee in this action after being alerted to this defect in December 2023. Accordingly, the UTPCPL claim will be dismissed without prejudice.

### C.    Tortious Interference with Contractual Relations

Belfi's claim for tortious interference with contract is also time-barred. The elements of a tortious interference claim are:

> (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

*Hyldahl v. Denlinger*, 661 F. App'x 167, 170-71 (3d Cir. 2016) (quoting *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. Ct. 2009)). The statute of limitations for such a claim is two years. *Id.* at 170 (citing *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004)).

For his tortious interference claim, Belfi alleges Defendants "interfered with his mortgage contract with USAA by sending threatening notices on, but not limited to March 12, 2019, 'cautioning' USAA Federal Savings Bank not to disburse any funds from the potential foreclosure sale of his primary residence located at 1502 E. Moyamensing Ave." Am. Compl. ¶ 93. He also alleges Defendants "interfered with his contract with his personal financial institution"—

Aspiration Financial, LLC/Radius Bank—"by garnishing his account and restricting his use of personal funds." *Id.* ¶ 101.

The conduct on which this claim is based occurred while the state court litigation was ongoing. Belfi himself alleges Defendants' interference with his mortgage lender occurred on March 12, 2019, when they sent a letter to USAA. *Id.* ¶ 93. The letter in question is attached as an exhibit to Belfi's Amended Complaint. *Id.* Ex. 10. As Defendants note, the letter was copied to Belfi's counsel in the underlying state court action, *id.*, so Belfi either was or reasonably should have been aware of the alleged interference around the time the letter was sent, more than four years before this lawsuit was filed. Although the Amended Complaint alleges Defendants' threatening notices were not limited to the one sent on March 12, 2019, it identifies no later communications.

As for the interference with Belfi's financial institution, while the Amended Complaint does not specify a date or dates on which Belfi's funds were garnished and restricted, it is clear these actions occurred while the underlying state court action was ongoing, as discussed in detail above.[21] Belfi's tortious interference claim is therefore time-barred.

---

[21] Defendants suggest that based on Belfi's allegations regarding a June 11, 2018 hearing at which he was nearly held in contempt of a court order freezing his funds in his primary account at Radius Bank, the interference must have predated the hearing. Defs.' Mem. Supp. Mot. Dismiss 10 n.6, ECF No. 17. Belfi disputes this, arguing the communications post-dated the June 11, 2018 hearing and adding that Defendants "also communicated with Aspiration to verify his bank statements for trial on November 26, 2019." Pl.'s Opp'n 5, ECF No. 18. This dispute is immaterial because it is clear from the Amended Complaint that the garnishment and restriction of Belfi's funds occurred during the course of the state court action for reasons discussed above.

Belfi also notes that in February 2023, Attorney Wagner opposed his motion to vacate and release funds in the Court of Common Pleas. *Id.* at 5. He provides no explanation as to how this court filing constitutes interference with his contract with his bank. In any event, the opposition brief, a filing in the underlying state court action made at the request of the state court, is protected by the judicial privilege doctrine, discussed in greater detail below. *See Schwartz v. OneWest Bank, FSB*, 614 F. App'x 80, 83 (3d Cir. 2015) (holding claims for intentional interference with

### D.      Negligent Misrepresentation

Belfi's negligent misrepresentation claim will also be dismissed.  A claim for negligent

misrepresentation requires proof of four elements: "(1) a misrepresentation of a material fact; (2)

made under circumstances in which the misrepresenter ought to have known its falsity; (3) with

an intent to induce another to act on it; and[] (4) which results in injury to a party acting in

justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).  The

statute of limitations for a negligent misrepresentation claim is two years.  *Rodgers*, 845 F. App'x

at 147 (citing 42 Pa. Cons. Stat. § 5524(7)).

Belfi alleges Defendants misrepresented the material facts that (1) "the 'League Street

Partnership' was a *valid* Pennsylvania general partnership" and (2) "Ms. Brophy was the *managing*

partner of" the partnership.   Am. Compl. ¶ 106.   According to the Amended Complaint,

Defendants made this misrepresentation in the complaint they filed against Belfi in state court in

December 2017 and in subsequent iterations of that state court complaint.  *Id.* ¶¶ 1-3, 9.  Belfi also

alleges Defendants have "continuously misrepresented the same to this day."  *Id.* ¶ 99.

To the extent the claim is based on misrepresentations made during the course of the

underlying state court litigation, it is clearly time-barred.   Belfi claims to have relied on

Defendants' misrepresentations.   *Id.* ¶ 107.   But the Amended Complaint also alleges the

partnership agreement was forged and Belfi knew of the forgery within months after the state court

action was filed through the expert report he obtained in February 2018.  *See id.* Ex. 3.  Indeed,

Belfi defended the state court action at least in part on this basis, presenting expert testimony at

trial that his signature on the agreement was forged.  *Id.* ¶¶ 23, 27-30.  It is thus clear from the

existing and prospective contractual relations based on the filing of a foreclosure action and
communications in connection with that action were barred by the judicial privilege).

Amended Complaint that Belfi either knew or reasonably should have known the partnership was invalid as early as February 2018 and no later than November 2019, when the state court case went to trial.[22]  This knowledge also forecloses Belfi's negligent misrepresentation claim to the extent it relies on misrepresentations after the state court litigation was concluded, as Belfi cannot have relied on misrepresentations he knew were false.

Moreover, the claim must be dismissed because it is barred by Pennsylvania's judicial privilege.  The judicial privilege provides "absolute immunity for 'communications which are issued *in the regular course of judicial proceedings* and which are *pertinent and material to the redress or relief sought*.'"  *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004) (quoting *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986)).  The privilege "sweeps broadly to protect '[a]ll communications pertinent to any stage of a judicial proceeding.'"  *Schwartz*, 614 F. App'x at 82 (alteration in original) (quoting *Binder v. Triangle Publ'ns, Inc.*, 275 A.2d 53, 56 (Pa. 1971).  It "covers statements by a party, a witness, an attorney, or a judge," and "is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice."  *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015).

Belfi's negligent misrepresentation claim is based entirely on statements made by opposing counsel in pleadings (and perhaps other filings) made in the state court litigation.  As such, the claim is barred by the judicial privilege.  *See Church Mut. Ins. Co. v. Alliance Adjustment Grp.*, 708 F. App'x 64, 69-70 (3d Cir. 2017) (holding negligent misrepresentation and fraud claims based on misrepresentations in pleadings submitted on behalf of an opposing party were "made during

---

[22] For the same reason, it clear from the Amended Complaint that Belfi cannot show reliance, as required for a negligent misrepresentation claim.  *See* Defs.' Mem. Supp. Mot. Dismiss 6 n.5, ECF No. 17.

the course of litigation and thus shielded by judicial privilege"); *see also id.* at 71 (finding claim that lawyers inserted "fabricated" information into complaints would be barred by judicial privilege).

### E.     Aiding and Abetting Fraud and Civil Conspiracy

In Count V of the Amended Complaint, captioned "Aiding and Abetting Fraud and Civil Conspiracy," Belfi alleges a conspiracy

> to defraud [him] of the money due to him from the rental income he received from his property at 1502 E Moyamensing Ave., Phila, PA, the proceeds from the sale of his property at 2251 League St., Philadelphia Pa and the ultimate beneficial use of his personal property and land, along with his exempt funds.

Am. Compl. ¶ 112.  Defendants are alleged to have participated in the conspiracy by taking "the specific actions outlined in this complaint with the intent to injure [Belfi] based on their fraud and perjury," including by "assert[ing] that the League Street Partnership is a *valid* Pennsylvania entity and Ms. Brophy is the managing partner of such entity" in an effort to "justify and validate" their claims. *Id.* ¶¶ 113-14.

The statute of limitations for these fraud-based claims is two years.  *See Kliesh v. Select Portfolio Servicing, Inc.*, 527 F. App'x 102, 104 (3d Cir. 2013) (statute of limitations for fraud and civil conspiracy is two years (citing 42 Pa. Cons. Stat. § 5524(7))).  As set forth above, apart from the filing of the corporate disclosure statement, the conduct alleged in Amended Complaint occurred while the state court action was being litigated between December 2017 and January 2020.  The corporate disclosure statement is no more actionable as fraud than as abuse of process, for the reasons explained above.  These claims are therefore time-barred.

### F.     Intentional Infliction of Emotional Distress

Finally, Belfi asserts a claim for intentional infliction of emotional distress (IIED).  An IIED claim "requires four elements: (1) the conduct must be extreme and outrageous; (2) the

conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  *Robinson v. Nat'l R.R. Passenger Corp.*, 821 F. App'x 97, 102 (3d Cir. 2020) (citation omitted).  The statute of limitation for an IIED claim is two years.  *Ormsby v. Luzerne Cnty. Dep't of Public Welfare Office of Human Servs.*, 149 F. App'x 60, 62 (3d Cir. 2005).  Rather than plead conduct satisfying the foregoing elements, Belfi alleges only that (1) the averments elsewhere in the Amended Complaint are "incorporate[d] by reference," and (2) "[m]edical testimony is not required to show emotional distress damages in an *abuse of process* claim."  Am. Compl. ¶¶ 120-21 (emphasis added).

Defendants argue that even reading the Amended Complaint as a whole, "there are no factual allegations of conduct by the Defendants occurring within two (2) years of the date on which this lawsuit was filed which could give rise to this claim."  Defs.' Mem. Supp. Mot. Dismiss 11, ECF No. 17.  The Court agrees.  To the extent the IIED claim is based on conduct by Defendants while the underlying state court action was being litigated between December 2017 and January 2020, the claim is time-barred.  As noted, the only conduct alleged within two years of the filing of this action in November 2023 is Defendants' filing of an opposition to Belfi's untimely motion to vacate in state court and filing of a corporate disclosure statement in the Third Circuit.  These actions cannot give rise to an IIED claim as a matter of law.  *See Robinson*, 821 F. App'x at 102 (an IIED claim requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" (citation omitted)).  In any event, this conduct is clearly protected by the judicial privilege.  This claim will also be dismissed.

### G. Punitive Damages and Vicarious Liability

The Amended Complaint also includes counts captioned "Punitive Damages" and "Vicarious Liability." Because all of Belfi's underlying claims will be dismissed, there is no basis for Belfi to recover under either theory. These counts will therefore be dismissed.

## CONCLUSION

As set forth above Belfi's claims for abuse of process, violations of the FDCPA and the FCEUA, tortious interference with contractual relations, negligent misrepresentation, aiding and abetting fraud and civil conspiracy, and intentional infliction of emotional distress are barred in their entirety or in substantial part by the applicable statute of limitations and/or the judicial privilege doctrine. Belfi's efforts to state a claim under some of these theories based on conduct within the limitations period—Defendants' filing of a corporate disclosure statement in the Third Circuit Court of Appeals and the filing of a court-ordered response to the motions to vacate judgment and release funds—are unavailing, and further amendment would be futile. These claims will therefore be dismissed with prejudice. While Belfi's UTPCPL claim is not time-barred, the claim belongs to Belfi's bankruptcy estate, so Belfi lacks authority to pursue it. The UTPCPL claim will therefore be dismissed without prejudice.

An appropriate order follows.

BY THE COURT:


    /s/ Juan R. Sánchez   
Juan R. Sánchez, J.